THOMAS CROUCHER *vs.* JAMES S. WILDER.

If the master of a vessel hires a berth for her at a wharf without notice of any rule of that wharf concerning the mode of discharging cargoes different from the usage at similar wharves in the same port, a stevedore whom he employs to discharge his cargo may do so according to such usage, and, if prevented by the wharfinger, may maintain an action against him for damages.

Evidence that, on the arrival of a vessel in port, the master, by direction of the consignees, who were to pay the wharfage, engaged a berth for the vessel at a particular wharf, is not sufficient to charge him with their knowledge of a rule of that wharf concerning the mode of discharging cargoes different from the usage at similar wharves in the same port.

TORT by a stevedore against the wharfinger of Constitution Wharf in Boston, to recover damages upon the following case:

At the trial in the superior court, before *Vose*, J., the plaintiff introduced evidence tending to show that on October 10, 1865, he made a bargain with the master of the barque Mary A. Troup, then by authority of the defendant lying at Constitution Wharf, which was a plank wharf, for the purpose of discharging her cargo of iron, to discharge the same for forty cents per ton; and the next morning laid down upon the wharf, by the vessel, a wooden platform for his horse to travel upon in hoisting the cargo, and arranged his apparatus and proceeded with the work. Shortly afterwards the defendant appeared and ordered the plaintiff to desist from discharging the cargo in the manner he was then doing, and to take up his platform and remove his horse; saying that he did not allow horses to be used in discharging cargoes, but only steam-engines. The plaintiff refused

to desist, and claimed the right to discharge the cargo in that manner; whereupon the defendant forcibly took up the platform, and removed it and the horse, and prevented the plaintiff from completing the work.

The plaintiff offered to prove that the mode in which he was discharging this cargo was a reasonable and proper mode, and according to the custom prevailing universally in Boston at wharves of similar construction, and doing similar business; but the evidence was excluded.

The plaintiff also put in the charter of the Constitution Wharf Company, St. 1847, *c.* 135; and it appeared that the company owned this wharf, and had carried on a general wharfage business under their charter. The defendant testified that he was wharfinger, and had the sole superintendence and management of the wharf, and had established a rule that no horse should be used in discharging cargoes from vessels lying there. It was in controversy whether either the plaintiff or the master of the barque had notice of this rule, prior to the time when the plaintiff began to discharge this cargo.

The plaintiff asked for these instructions to the jury:

"1. That, as the defendant set up a special rule, as to the mode in which cargoes should be discharged at this wharf, which was not in conformity with that prevailing in the port, it was incumbent on him to prove that the master of the vessel and the plaintiff had seasonable notice thereof; that if, when the master engaged his berth at this wharf, he had no notice of it, and if neither he nor the plaintiff had any notice of it until after the vessel had commenced to discharge her cargo, any subsequent notice of the rule could not affect the legal rights of the parties, and the vessel was entitled to be discharged, and the plaintiff had a right to discharge her in any proper and reasonable mode.

"2. That, if the master had no notice of said rule until after he had occupied his berth at the wharf as aforesaid, nor until after he had made a contract with the plaintiff to discharge her in the manner stated, the vessel had a right to be discharged in any proper and usual mode, without interruption by the defendant, and the plaintiff, being thus employed by the master had

the right thus to discharge her, although the plaintiff had notice of said rule before the actual discharge of the cargo was begun.

"3. That, although the defendant, as wharfinger, might have authority to prescribe reasonable rules and regulations for the control of business at this wharf, yet the wharf company was a *quasi* public corporation, and its business, duties and obligations were of a *quasi* public character; and therefore, in reference to the rule set up in this case, the jury must be satisfied that it was a reasonable and proper rule, under all the circumstances of the case, taking into consideration the character of the property, the nature of the business, the usages of the port, the rights and reasonable convenience of vessels properly occupying berths for the purpose of discharging their cargoes at said wharf, as well as the convenience or interests of the proprietors of said wharf; and must also be satisfied that the master had notice of it before the discharge of the cargo was begun, and before he occupied his berth at the wharf; and that, unless the jury were satisfied as to both points, the existence or any subsequent notice of said rule would not furnish any defence."

But the judge refused the plaintiff's prayer for instructions, and instructed the jury as follows:

"1. That the defendant, as wharfinger, had the right to prescribe any rules he saw fit as to the mode of discharging cargoes at said wharf; and that such rules would be binding on all persons and vessels there discharging.

"2. That it was wholly immaterial whether or not the master of this vessel ever had notice of said rule or not, or whether the plaintiff had such notice before beginning to discharge said cargo; but that the defendant, after the discharge had been commenced, might inform the plaintiff of the rule and require him to comply with it, and that, upon the plaintiff's refusal so to do, he was justified in removing the plaintiff and his horse and tackle from the wharf, and in preventing him from completing the discharge of the cargo in the mode in which he was discharging using reasonable and proper force."

It being conceded by the plaintiff that the defendant did so inform and order him after he had begun the discharge of the cargo, and that the plaintiff refused to comply with said request, and that the force and mode of removal were not improper in degree or kind, the judge directed a verdict for the defendant; which being returned, the plaintiff alleged exceptions.

*E. Merwin,* for the plaintiff.

*S. J. Thomas,* for the defendant.

BIGELOW, C. J. The plaintiff is entitled to a new trial. It is a well established principle of law, applicable to all contracts, especially to those of a mercantile character, that they are deemed to be entered into with reference to the usages of trade and business which prevail at the place where the contracts are made and to be performed. Such usages are presumed to be known, and to be within the contemplation of all persons who enter into contracts concerning matters to which they relate, and they become engrafted into contracts with like effect as if they had formed a part of the express stipulations between the parties. If an agreement is made by virtue of which something is to be done in a city or town, and the same act or service is uniformly done or performed in a certain way, by persons of like occupation in that place, it is just and reasonable to suppose that the intention of the parties was that it should be done in that way and in no other. *Hutton* v. *Warren,* 1 M. & W. 475. *Potter* v. *Morland,* 3 Cush. 384. *Putnam* v. *Tillotson,* 13 Met. 517. *Lamb* v. *Parkman,* 1 Sprague, 343, 351. The application of this principle to the case before us leaves no room to doubt that the plaintiff was entitled to the instruction for which he asked. In the absence of any evidence to prove any notice to the master of the vessel of the existence of any special rule as to the mode of unloading cargoes at the wharf at which he had hired a berth, or any knowledge by him of such a rule, before or at the time the bargain was completed, the agreement for the use of the wharf would draw with it such incidents of such a contract as usually attach to it in the port of Boston. He would have a right to discharge his cargo, or to contract with another person to perform the service, in the mode and by the use of means which

were ordinarily adopted in unloading vessels at wharves in the city, provided the usage was reasonable and proper and adapted to the business to which it related. This was in substance the instruction for which the plaintiff asked, and it seems to us very clear that it ought to have been given to the jury.

It is hardly necessary to add, that the mode for discharging the cargo could not be changed by any notice given to the master, or to his sub-contractor, the plaintiff, after the contract had been concluded and the execution of it had commenced.

*Exceptions sustained.*

At the new trial in the superior court, before *Ames*, C. J., the master of the barque testified: " I came ashore and saw my consignees, and by their direction went to the wharfinger of Constitution Wharf [the defendant] and asked him if there was a berth to haul in my vessel to discharge. He told me there was, and pointed out one to me on the south side of the wharf. I made my arrangements for a steamer and had my vessel hauled in the same day, within an hour and a half after this interview." And evidence was introduced, substantially the same as at the former trial, concerning the plaintiff's bargain with the master to discharge the cargo of iron, and his proceeding the next day to do so by horse power, and his interruption by the defendant. The plaintiff further introduced evidence tending to prove a usage to discharge cargoes at other similar wharves in Boston either by steam-power or by horses, and there was conflicting evidence " whether this usage prevailed to some extent at Constitution Wharf."

The defendant, among other evidence, introduced testimony which he contended had a tendency to show that the public and notorious rule of Constitution Wharf for fifteen years had been not to permit vessels to be discharged by horses on the wharf, because it would not only injure the planking of the wharf, but obstruct all other business there; and that during this whole period only two exceptions to this rule had been made, each in the case of a vessel having a light cargo of salt. And he " offered to show notice of this usage to the consignees, with whom, and

not with the master, he claimed that the evidence of the master as above stated showed he made the bargain for landing the cargo, and who were to pay the wharfage, previously to giving permission to the master to haul into the wharf, and to the bargain made by the plaintiff with the master for discharging, although the discharging of the cargo was to be done by the master at the expense of the vessel." But the judge excluded this evidence as immaterial.

The defendant asked the judge to rule that " the agreement to land the cargo was with the consignees; and notice to the consignees was sufficient. The stevedore was servant of the master; and notice to the master was notice to the stevedore. If the master knew that this wharfinger had rules relating to discharging vessels, he was bound to inquire what the rule was. If the stevedore knew there were different rules on these different wharves, or was any rule at this wharf in regard to discharge, then the stevedore was bound to inquire what the rule was at this wharf."

The judge declined so to rule, and instructed the jury " that the owners of wharves may be said to be trustees, to a certain extent, for the public, and cannot establish unreasonable rules; that such owners had the right to construct wharves adapted to particular kinds of business, or to be used in special methods, and to make rules limiting their use to such business and modes of use as their wharves might be adapted to, and to limit by rule the use of such power for discharging vessels as the convenience of the wharf made reasonable by reason of its size, construction or amount of business; that notice must be proved of any rule restricting the use of the customary and usual means of discharging vessels at wharves in Boston constructed substantially like Constitution Wharf; that in the present case, in the absence of any notice to the plaintiff of a special usage or rule at the wharf where the vessel lay, as to the mode of unloading the cargo, or of any special stipulation concerning the method to be adopted in taking iron out of the vessel, the plaintiff had a right to discharge the cargo in the usual manner in which such cargoes are discharged from vessels at the wharves in Boston constructed

like Constitution Wharf, and to use all proper, reasonable and usual means to accomplish the object; and that, if the plaintiff had no notice of such rule or usage, and while discharging said cargo in such usual manner was forcibly interrupted and prevented by the defendant, he was entitled to recover such damages as he had actually sustained thereby, including therein the sum paid to the master of the vessel as demurrage. But that, if the plaintiff had notice of the particular rule or usage alleged to exist at this wharf, and was violating the same by the man ner in which he was discharging said cargo, he could not maintain his action."

A verdict was returned for the plaintiff; and the defendant alleged exceptions, which were argued before all the judges in March 1869 by the same counsel.

BY THE COURT. The instructions to the jury were substantially in accordance with the judgment of this court granting the new trial, and were sufficiently favorable to the defendant. The preliminary remark " that the owners of wharves may be said to be trustees to a certain extent for the public," was fully guarded and explained by what immediately followed. The plaintiff had introduced evidence of a custom to discharge vessels either by steam-power or by horses at other similar wharves in Boston, and even at this very wharf; and the jury were instructed that he could not maintain this action unless he was using only the usual and customary means of discharging a cargo at such a wharf, or if he had notice of any rule or usage at this wharf restricting the use of such means. There was no evidence of any notice to the master of such a rule or usage before the beginning of the discharge of the cargo; and it seems to have been assumed that notice to the plaintiff would have the same effect as notice to the master. It appeared that the defendant's agreement to allow the vessel to lie and discharge at this wharf, and the plaintiff's agreement to discharge the cargo, were both made with the master, upon whom and not upon the consignees the duty of discharging the cargo from the vessel upon the wharf rested ; and evidence of notice to the consignees of the usage elied on by the defendant was therefore rightly rejected as immaterial                    *Exceptions overruled.*